Robert C. Matz (California State Bar No. 217822)
MATZ LAW ALAMEDA
1516 Oak Street, Suite 104
Alameda, CA 94501
Telephone: (510) 710-1071
E-mail: robert@matzlawgroup.legal

Attorneys for Plaintiffs Francesca Tosti, as an Individual, and as Administrator of the Estate of James Reja

# UNITED STATES DISTRICT COURT

## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| FRANCESCA TOSTI, a resident of the State of California, as an individual, and as Administrator of the Estate of James Reja;<br><br>      Plaintiffs,<br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES MARSHALS SERVICE; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES DEPARTMENT OF HOMELAND SECURITY INVESTIGATIONS; INTERIM US ATTORNEY, LESLIE WOODS, DISTRICT OF NEBRASKA; ASSISTANT US ATTORNEY, THOMAS KANGIOR, DISTRICT OF NEBRASKA,<br><br>      Defendants, | CASE NO.<br><br>**FRANCESCA TOSTI, IN HER INDIVIDUAL CAPACITY, AND AS ADMINISTRATOR OF THE ESTATE OF JAMES REJA, COMPLAINT FOR DAMAGES:**<br><br>1. **GENERAL NEGLIGENCE – WRONGFUL DEATH**<br><br>2. **DAMAGE TO PROPERTY**<br><br>3. ***BIVENS* CAUSE OF ACTION, DEPRIVATION OF FEDERAL CIVIL RIGHTS (48 U.S.C. §1983)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Francesca Tosti ("Ms. Tosti," or "Widow Tosti,"), in her individual capacity, and as Administrator of the Estate of James Reja ("Administrator Tosti"), hereby submit their Complaint for (1) wrongful death, and (2) damage to property, and (3) deprivation of federal civil rights against Defendants United States Immigration and Customs Enforcement ("ICE");

CASE NO.

TOSTI'S COMPLAINT FOR
WRONGFUL DEATH, PROPERTY
DAMAGE, AND *BIVENS* ACTION

United States Marshals Service ("US MARSHALS"); United States Department of Homeland Security ("DHS"); United States Customs and Border Protection ("CPB"); United States Department of Homeland Security Investigations ("HSI"), Interim US Attorney, Leslie Woods, Assistant US Attorney, Nebraska, Thomas Kangior, Assistant US Attorney, Nebraska (collectively, "Defendants")  as follows:

<u>SUMMARY OF ACTION</u>

Special Agent Craig Allrich of Homeland Security Investigations ("HSI"), a division of Immigration and Customs Enforcement ("ICE") flew from Nebraska, came to Los Angeles, California, and along with an agent from the US Marshals Service ("US Marshals Service"), shot James Reja on November 13, 2023, ultimately causing his death, and then flew back to Nebraska.  Mr. Reja's lifeless body was left on the cold concrete for eight hours.  A friend who heard of the shooting, was able to duck under the police tape and held a cell phone to Mr. Reja's ear so Francesca Tosti, now Widow Tosti, could whisper her goodbyes into the dead, deaf ears of her husband, James, the father of her two children.[1]

After killing Mr. Reja, Special Agent Craig Allrich, and his colleagues, began taking steps to cover up the true cause of Mr. Reja's death.  Shortly after the shooting, counsel for Widow Tosti contacted an employee of the pharmacy and asked if there was video of the shooting and was told there was, but that he'd need to check with the owner of the pharmacy before releasing it.  When counsel for Widow Tosti contacted this same employee days later, the employee said "the Feds told me not to release it to anybody," or words to similar effect.  The bullet holes from the shootout were quickly covered up and painted over.  On May 8, 2024, Counsel for Widow Tosti served Claims for Damage, Injury, or Death on the relevant federal agencies, allowing them six months to investigate and respond to the claims.  As of the date of filing, despite having over a year to respond and report on the results of their investigation (if

---

[1] James Reja had a mistress, Kristina Warren, but neither Kristina Warren ("Mistress Warren") nor Jakob Rega, the child born out of wedlock, complied with the Federal Torts Act by filing a Claim.  Although this child, born out of wedlock, might be entitled to some portion of any proceeds of this action, neither of them is a party to this action. Mistress Warren is an adverse witness.

CASE NO.                                        2

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

any), none of these agencies has responded to these claims, other than to acknowledge receipt of them.  This Complaint is being filed to obtain judicial review of this killing.

After killing Mr. Reja, Special Agent Craig Allrich, and his colleagues, embarked upon a coordinated campaign aimed at stealing the entirety of Mr. Reja and Widow Tosti's substantial wealth.  Mr. Reja and Widow Tosti were longtime residents of Los Angeles, and over the course of their marriage, and Mr. Reja's storied career, they amassed many millions of dollars.

During his career, Mr. Reja invented toys for Mattel, operated and sold a high end aquarium business in Los Angeles for $1,000,000, operated a recording studio in Los Angeles where famous artists such as Devo, George Clinton, Carmen Electra, and other famous acts recorded music, he bought and sold art and antiquities, with the assistance of his wife, Francesca, he bought, restored, and sold architecturally-significant homes in Los Angles (Kun House), La Jolla (the Schindler House), Sherman Oaks (the Schindler House II), and Palm Desert, winning numerous awards, he inherited the proceeds from the sale of an apartment building in Los Angeles, and much, much more.  With the proceeds, Mr. Reja and his wife, Francesca Tosti, began collecting fine art from famous artists (Picasso, Kandinsky, Dali, Diego Rivera, and more), furniture (Ray and Charles Eames and more), exotic cars (a Ferrari and more), vintage Porsches, vintage racing motorcycles (Nortons and more), owned 500 acres of real property in Tomales Bay, California, a property in Napa where he planned to exhibit the art he was collecting, and more.  All of this was accomplished well before 2019, and is a matter of public record.

Based upon allegations of drug trafficking and money laundering following third party traffic stops in Nebraska in 2019 and 2020, Special Agent Craig Allrich, through the coercion of witnesses, threats of deportation, knowing use of false testimony, abuse of judicial process, *ultra vires* acts, and more, sought forfeiture of the entirety of Mr. Reja and Ms. Tosti's wealth, even though it is a matter of public record that this wealth had nothing to do with the allegations relating to the third party traffic stops in 2019 and 2020.  Even after the US Attorneys' office in Nebraska confirmed they would "not be seeking seizure or forfeiture" of certain items of fine art

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

and furniture "soft seized" in Los Angeles, and HSI confirmed Widow Tosti could dispose of certain antiquities and tribal art that were also "soft seized" in Los Angeles "at her discretion," Special Agent Craig Allrich, by and through fake/unauthorized subpoenas, unauthorized phone calls to art auctions houses, and the bank where the probate assets are being held, sought to interfere with Widow Tosti's contractual relationships to prevent her from obtaining the money she and her children need to survive, interfering with a Probate action pending in Mendocino County.  Widow Tosti has been rendered penniless, and needs food stamps to feed her family.

Late last week, the newly appointed Interim US Attorney, Leslie Woods, from the US Attorneys' Office in Nebraska, decided to join in Special Agent Craig Allrich's unlawful scheme by sending an email to counsel for Widow Tosti, indicating she wanted to "revoke" the previous agreements with the US Attorneys' office and HSI, in an improper and unlawful attempt to take money from the Estate of James Reja to pay for a "money judgment" she hopes to obtain against Mr. Reja, even though he is no longer a defendant (and could never be a defendant) in the criminal case.  This same newly appointed Interim US Attorney, Leslie Woods, sought to deprive Widow Tosti of her Constitutional right to counsel, engaged in an *ex parte* communication with Ms. Tosti even though she knew Widow Tosti was represented by counsel, and, by and through Special Agent Craig Allrich, threatened Widow Tosti with criminal indictment for effecting the sale of items that were previously cleared by both the US Attorneys office and HSI, in an improper attempt to prevent Widow Tosti from filing this civil Complaint.  The newly appointed Interim US Attorney from Nebraska, Leslie Woods, also allowed Special Agent Craig Allrich, the man who killed her husband, to contact Ms. Tosti by text, and email, demanding "a meeting."  To be clear, she knowingly allowed a man who Widow Tosti believes to be murderer to contact her, not through counsel, he could further seek to intimidate, harass, and traumatize her, and further seek to deprive Widow Tosti of her Constitutional and civil rights, all in the name of trying to get the money ICE needs to continue its unlawful campaign of terror against immigrants living in California, and the United States.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

In addition, an art dealer/agent of HSI, tasked with storing the soft seized items, stole valuable works of art belonging to the Estate of James Reja whilst under the supervision of HSI, and improperly stored them, causing damage to them.  What's more, federal agents seized furniture, fine art, and antiquities from a storage facility in Palm Springs that Special Agent Craig Allrich knew, by virtue of a subpoena, belonged to James Reja, and despite repeated demands for an identification of this seized property, and information as to its whereabouts, HSI has refused/failed to provide information on the items they seized.  In short, HSI stole this valuable property belonging to the Estate of James Reja, and, by refusing to provide legally-required information as to the items seized, the basis for the seizure, the location of these items, and providing a CAFRA form that would allow Widow Tosti to obtain judicial review of this seizure, they have brazenly dared Widow Tosti to do something about it.  They are also still in possession of personal items belonging to Widow Tosti, such as jewelry stating "Jamey loves Francesca," her wedding ring, legacy jewelry from her grandmother, and more, for which they have not sought forfeiture, and yet have refused to return despite being statutorily-required to return these items.  The litany of unlawful conduct committed by federal agents, and Officers of the Court in Nebraska, and (now) Interim US Attorney, Leslie Woods, is stunning in its scope.

Counsel for Widow Tosti is aware that, under the Federal Rules, a Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," which means it needs to clearly explain what the Plaintiff is suing for and why they believe they should win, but it doesn't require detailed factual allegations or a recitation of every element of the legal claim.  Given the scope of the unlawful conduct, the complexity of the underlying facts, and the multitude of related legal proceedings, which, at present, involves (a) a Probate action pending in Mendocino County, (b) a Civil Forfeiture Action pending in the United States District Court for the District of Nebraska, (c) a Quiet Title action pending in the United States District Court for the Northern District of California, and (d) a criminal case pending in the United States District Court for the District of Nebraska, this is a decidedly difficult task.

TOSTI'S COMPLAINT FOR
WRONGFUL DEATH, PROPERTY
DAMAGE, AND *BIVENS* ACTION

Widow Tosti has sought to resolve the many disputes she has with the federal government, including the ones at issue in this Complaint, but they have refused to engage in settlement talks, ignored repeated emails seeking relief for the damage they continue to cause, choosing to instead engage in a coordinated campaign of intimidation, harassment, and violation of her Constitutional and civil rights in the hopes she, and her attorney, will just "go away." Widow Tosti comes to this Court simply seeking judicial review of the killing of her husband, the damage the federal government has caused to her property, and the deprivation of her Constitutional and civil rights. She prays this Court will allow her to address any perceived deficiencies in this Complaint so that she can obtain the relief she so richly deserves, and invites the assistance of others in the legal community to help her achieve justice in this dispute.

### COMPLIANCE WITH CLAIMS STATUTE

1.      Plaintiff has complied with the Claims Statute. See **Exhibits 1 and 2**. None of the Defendants shared any results of any investigation (if any), nor did they offer to settle this dispute. Neither Kristina Warren, Guardian Ad Litem for Jakob Rega, or Jakob Rega, a child of James Reja's born out of wedlock, submitted a Claim to these agencies related to the wrongful death of James Reja, and damage to property. Kristina Warren is also an adverse witness in the underlying actions and, for these reasons, is not a Plaintiff in this action.

### JURISCTION AND VENUE

2.      Defendants HSI, CBP, DHS, and the US Marshals Service were served with an administrative claim pursuant to the Federal Tort Claims Act on around May 8, 2024. (*See* **Exhibits 1-3**). Subsequently, ICE acknowledged receipt of the Claims on behalf of HSI. As of the date of filing, none of the Defendants has responded to the Claims, not even to deny them.

3.      This Court has jurisdiction over all causes of action asserted against the federal government pursuant to 28 U.S.C. §§2671-2680 and 42 U.S.C. §1983. Additionally, this Court has jurisdiction over all other causes of action because all of the claims arise from a common nucleus of operative facts that are so intertwined that they cannot reasonably be separated.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)210-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

4.      Venue is proper in the United States District Court for the Central District of California as the killing that occurred, and a substantial part of the wrongful acts and/or omissions complained of herein occurred in Los Angeles, which is situated in the Central District of California.

### THE PARTIES

5.      Plaintiff Francesca Tosti ("Widow Tosti") is an individual residing in Elk, California, Mendocino County, the widow of James Reja and the mother of two children of James Reja, a Claimant (see **Exhibits 1 and 2**), and Administrator of the Estate of James Reja. (*See* **Exhibit 3**).

6.      Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT("ICE") is a branch of the federal government which acts as a law enforcement agency.  In response to service of the Claims, ICE indicated it was accepting service of the Claims on behalf of itself and Homeland Security Investigations, but, as of the date of filing, has not responded.

7.      Defendant UNITED STATES MARSHALS SERVICE ("US Marshals Service") is an agency of the federal government.  It operates as a bureau within the Department of Justice.  It accepted service of the Claims, but, as of the date of filing, has not responded.

8.      Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") is a United States federal executive department responsible for public security.  It was served with Claims but, as of the date of filing, has not responded.

9.      Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION ("CBP") is the largest federal law enforcement agency of DHS.  CBP was served with the Claims but, as of the date of filing, has not responded.

10.     Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY INVESTIGATIONS ("HSI") claims to be, but is, based upon the acts complained of herein, not, the "premier federal law enforcement agency within the Department of Homeland Security,"

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

CASE NO.                                    7

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

and an agency of the federal government.  HSI was served with the Claims but, as of the date of filing, has not responded.

11.    Defendant CRAIG ALLRICH is, upon information and belief, an individual residing in Nebraska.  He purports to work as a Special Agent of the Department of Homeland Security Investigations in its Nebraska office; however, to the extent CRAIG ALLRICH has acted *ultra vires*, or HSI, ICE, DHS, or CPB disavow his authority, he is being named in his individual capacity for the acts set forth in this Complaint.

## AGENCY AND CONCERT OF ACTION

12.    At all times herein mentioned, Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times, except to the extent any individual/agent/employee of Defendants was acting *ultra vires*, were operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of the remaining Defendants.

## INTRADISTRICT ASSIGNMENT

13.    As the killing that is the subject of this action occurred in the Mid City area of Los Angeles, the Intradistrict assignment should be to the United States District Court, Western Division.

## BACKGROUND FACTS

14.    Francesca Tosti and James Reja met in Los Angeles, California in or around 2003.  After being in a committed relationship for nine years, during which time the couple worked and traveled together, on October 6, 2012, Plaintiff Francesca Tosti was married to James Reja in an opulent wedding held on a 500 acre property Mr. Reja owned in Tomales, Bay, Marin County.  Mr.Reja and Widow Tosti have two children from this marriage.

15.    During his storied career, Mr. Reja invented toys for Mattel, operated and sold a high end aquarium business in Los Angeles for $1,000,000, operated a recording studio in Los

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR
WRONGFUL DEATH, PROPERTY
DAMAGE, AND *BIVENS* ACTION

Angeles where famous artists such as Devo, George Clinton, Carmen Electra, and other famous acts recorded music, he bought and sold art and antiquities, with the assistance of his wife, Francesca, he bought, restored, and sold architecturally-significant homes in Los Angles (Kun House), La Jolla (the Schindler House), Sherman Oaks (the Schindler House II), and Palm Desert, winning numerous awards, he inherited the proceeds from the sale of an apartment building in Los Angeles, and much, much more.  With the proceeds, Mr. Reja and Ms. Tosti began collecting fine art from famous artists (Picasso, Kandinsky, Dali, Diego Rivera, and more), furniture (Ray and Charles Eames and more), exotic cars (a Ferrari and more), vintage Porsches, vintage racing motorcycles (Nortons and more), owned 500 acres of real property in Tomales Bay, California, a property in Napa where he planned to exhibit the art he was collecting.  All of this was accomplished well before 2019, and is a matter of public record.

16.    Attached as **Exhibit 4** is an excerpt from a Los Angeles Magazine article entitled "*Home Remedies*," from November of 2009, discussing Mr. Reja and Francesca Tosti's business activities relating to the restoration of architecturally-significant homes, as well as additional information on Mr. Reja's background and sources of wealth.  Another publicly-available article documents his receipt of a Modern Masterpiece Award for his work to restore a house designed by legendary architect Rudolf Schindler. (**Exhibit 5**).

17.    At no point either before or during their marriage did Mr. Reja ever share with Francesca Tosti the nature and extent of any other business activities, other than those activities related to restoring architecturally-significant homes, which was the only business activity Francesca Tosti and James Reja ever participated either before or during the course of their marriage, although they did participate in artistic endeavors such as making a short film, photo shoots for bands, and music videos.  They also collected furniture and fine art.

### THE KILLING

18.    Upon information and belief, in 2019, the federal government began surveillance of, *inter alia*, James Rega and Mistress Warren in connection with allegations of drug trafficking and money laundering, which were set forth in a Superseding Indictment in the

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR
WRONGFUL DEATH, PROPERTY
DAMAGE, AND *BIVENS* ACTION

United States District Court for the District of Nebraska that was filed against Mr. Reja the day after he was killed. (*See* **Exhibit 6**). In or around April of 2020, Mr. Reja began to experience severe and debilitating stress, and began to exhibit symptoms of both significant physical ailments, coupled with debilitating mental disabilities/illness, including what he described as severe brain fog, brain glitches, dizziness, splitting headaches, breathing problems, and nausea. Mr. Reja believed it was attributable to exposure to toxic mold at his *Las Palmas* residence, resulting in what he described as a strobe light effect in his eyes, breathing problems, hallucinations, fast heart rate, sleep deprivation, not knowing who he was, heartburn, and loss of control of his limbs. Mr. Reja began reporting these symptoms to his wife, Francesca Tosti, in April of 2020, and Mr. Reja appeared to be suffering from them until early to mid 2023.

19.     Upon information and belief, during this timeframe, Special Agent Craig Allrich, and other agents of the federal government, surreptitiously surveilled Mr. Reja and Mistress Warren, recording their phone conversations and other communications, and, for this reason, Special Agent Craig Allrich and his colleagues knew, or should have known, that James Reja suffered from both mental health disabilities and physical disabilities that substantially impacted one or more of his major life activities. The Americans with Disabilities Act requires law enforcement to provide reasonable accommodations to individuals with disabilities during the arrest process.

20.     During this surveillance, Special Agent Craig Allrich likely learned of Mr. Reja's fascination with "*Point Break*," a movie starring Patrick Swayze, Keanu Reeves, Lori Petty, and Gary Busey. In particular, Mr. Reja loved the scene involving "Bodhi's Choice," during which, facing capture by Johnny Utah at Bell's Beach during the "50-year storm," Bodhi chooses to ride the extremely dangerous, potentially lethal wave, rather than be arrested. More generally, upon information and belief, during the course of this surveillance, or else through communications with Mistress Warren, Special Agent Craig Allrich learned of possible suicidal ideations by Mr. Reja given the intense pressure of the manhunt being conducted by agents of the federal government over the third party traffic stops in 2019 and 2020 in Nebraska.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

CASE NO.                    10                    TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

21.    Under these circumstances, and under the law, Special Agent Craig Allrich, and his colleagues, should have exercised due care, and considered precautions, aimed at preventing this arrest from turning into tragedy.

22.    In one attempted arrest, agents of the federal government, with the assistance of Mistress Warren, attempted to arrest him at a park in Los Angeles.  Mr. Reja was able to run away from the federal agents trying to arrest him, and they did not, as Special Agent Craig Allrich, and US Marshal would later do, use lethal force.  After all, the allegations in the criminal complaint related to the interstate transport of marijuana, and money laundering, not violent crimes.  After the attempted park takedown, federal agents threw Mistress Warren in handcuffs, for effect, then released her, allowing her to travel to New Jersey, likely under some kind of immunity agreement with the federal government.  This failed attempt was not only an embarrassment to the federal government, it also deprived them of the direct assistance by Mistress Warren in any subsequent attempt to apprehend and arrest Mr. Reja.

23.    Special Agent Craig Allrich, a man with a well-known reputation for being "a hothead," angered and frustrated by this failure, and rather than seeking to accommodate Mr. Reja's mental health disabilities during the arrest process, instead hatched a plan aimed at *exploiting* Mr. Reja's mental health disability to obtain an opportunity to arrest him.  During this timeframe, as known by Special Agent Craig Allrich, and his colleagues, Mistress Warren frequently picked up prescription drugs from a particular pharmacy in Los Angeles.  A pharmacist working at this pharmacy confirmed that, during this timeframe, Mistress Warren would frequently pick up prescription drugs for Mr. Reja.  Upon information and belief, either with the assistance of Mistress Warren, or else by himself, or through colleagues, the pharmaicist was approached and instructed him either *not* to dispense the prescription until a particular date, or else not to dispense the entire prescription, so Mr. Reja would have to return to the pharmacy himself, since Mistress/Cooperating Witness Warren, with the blessing of the federal government, was now living in New Jersey with her son.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

24.     November 13, 2023, was the fateful day that Mr. Reja was lured to the pharmacy in question, with a cadre of federal agents waiting to arrest him.  This time, the federal government came loaded for bear, prepared to shoot to kill.  Rather than arresting Mr. Reja before he entered the pharmacy, perhaps by tranquilizer dart, or other non-lethal methods, the federal agents instead, perhaps at the direction of Special Agent Craig Allrich, or the US Marhsal, allowed him to walk into this pharmacy (with other customers in the store), and after Mr. Reja picked up his prescription, and walked to the door, he was confronted by a wall of armed federal agents, with a canine unit as well, and when Mr. Reja moved to place a gun at his temple, perhaps in an attempt to get this wall of federal agents to back off based upon a threat of self-harm, the federal agents, including Special Agent Craig Allrich, and an agent for the US Marshals Service, opened fire, spraying bullets in Mr. Reja's direction.  During this incident, the canine unit attacked his handler, suggesting something was seriously amiss in this takedown.

25.     Mr. Reja's lifeless body laid on the concrete for eight hours, whilst federal agents and officers from the Los Angeles Police Department did…something; no information was produced to counsel for Widow Tosti, and an employee of the pharmacy was instructed, by the feds, not to disclose it to counsel.  No discovery was given to counsel in the underlying criminal matter, and the federal government stayed the civil forfeiture case, thereby preventing discovery.  Defendants did not produce the result of an investigation into the events, if any.  They didn't even deny the Claims, preferring stone cold silence instead.

26.     The autopsy report lists three gunshot wounds: (1) Head, (2) Pelvis, graze, and (3) lower extremity, graze.  (See **Exhibit 7**).  The autopsy report states "the numbering of wounds is for descriptive purposes only and is not intended to imply the sequence or severity of injuries."  (*Id.*).  Counsel for Widow Tosti does not have access to any statements made by Special Agent Craig Allrich, or the US Marhsall, who shot Mr. Reja, but, upon information and belief, based upon information obtained from surveillance, the "suicide" theory was advanced by agents of the federal government in an attempt to absolve themselves of blame.  Although the ultimate cause of death might have been the gunshot wound to the head, which was "self-

inflicted," in that the shot might have came from the gun Mr. Reja was holding, it is possible that the discharge of the weapon was involuntary, and the result of the two other shots Mr. Reja sustained to his body. The fact that the wound to the head entered from the right parietal scalp, and exited the left parietal scalp, indicates Mr. Reja's movement was interrupted before he could place it horizontally at his temple. (*Id*). The "Manner of Death," which is listed as "suicide," was likely the result of self-serving testimony from Special Agent Craig Allrich, and the US Marshal, or other federal agents, to cover up this killing.

27.     This conclusion, however, apparently supported by statements unknown to counsel for Widow Tosti, or Widow Tosti, does not absolve Special Agent Craig Allrich, and the US Marshal, and others, and these federal agencies, of legal liability for this wrongful death. At bottom, this was a botched, discriminatory, killing of a man which cries out for judicial review, since none of the federal agencies have bothered to investigate or respond to the Claims, and since the federal government has refused to produce any discovery in any venue to Widow Tosti. As Widow Tosti has been denied the results of an investigation in response to her submission of Claim forms, and had been denied discovery by the federal government at every turn, and in every venue, by and through the filing of this Complaint, and the opening of the discovery allowed under the Federal Rules, Widow Tosti seeks answers to the many questions she has concerning this killing, which are long overdue.

**THE THEFT/DAMAGE**

28.     After killing Mr. Reja, the federal government then set out to steal everything he and Widow Tosti ever owned.

29.     One month later, on December 13, 2023, the HSI, lead by Special Agent Craig Allrich, kicked down the door to Widow Tosti's home in Elk, California and proceeded to empty it of contents. HSI despicably called this seizure, "Operation Point Break," in honor of the movie Mr. Reja loved, which, like the botched takedown they had recently conducted, ended in the death of the accused. (*See* **Exhibit 8**, p. 2, Case Title). Widow Tosti and her children were left with broken doors, bare floors, and people came to the premises to steal items

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

due to the (now) open access to the property due to the negligent actions of the federal agents. After taking everything, and breakdown down the doors, they simply left, like thieves in the night.

30.     On January 29, 2024, knowing full well that Mr. Reja was dead, the US Attorneys' Office in Nebraska wrongfully recorded *lis pendens* on Mr. Reja's real property holdings, including (a) the Sugarloaf Property, located on the coast of Mendocino, worth many millions of dollars, (b) a Frank Lloyd Wright property in San Anselmo, also worth many millions of dollars, and (c) a Cabin property located in Elk, worth close to a million dollars, all of which were purchased well before 2019, and all based on a criminal indictment they filed a day after killing Mr. Reja, which can never be successfully prosecuted for the simple fact that you can't convict a dead man.  After many months of informing the US Attorneys' office in Nebraska that the post-death Superseding Indictment, and Second Superseding Indictment improperly named Mr. Reja, a dead man, as a Defendant, a Third Superseding Indictment was filed, which does not name Mr. Reja as a Defendant.  (*See* **Exhibit 9**).  Notwithstanding the legal infirmity of having wrongfully recorded *lis pendens* on real property based on a post-death Superseding Indictment naming a dead man as a Defendant, the federal government has not removed these *lis pendens*, nor sought to amend them in any way to justify the recording.

31.     On February 4, 2024, with respect to the items seized during the odiously named "Operation Point Break," counsel for Widow Tosti submitted CAFRA forms asking for judicial review of the items seized.  When Special Agent Craig Allrich was told Attorney Matz was seeking judicial review of the seizures and forfeitures, he threatened to send a team to Los Angeles to kick down the doors of Mr. Reja's mother's garage and office and "hard seize" all items there (even though there would have been no basis to do so) instead of utilizing the "soft seize" procedure previously discussed.  Why would Special Agent Craig Allrich get so upset over judicial scrutiny of this seizure?  The answer would become clear in the months that followed.

32.     After calming him down, weeks later, in late February of 2024, Special Agent Craig Allrich, and other agents from HSI, conducted seizures consented to by Widow Tosti at

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

the home of Mr. Reja's mother, and an office in Beverly Hills, "soft seizing" millions of dollars of furniture, fine art, and antiquities and tribal art. Counsel for Widow Tosti was present at these seizures, and the federal government created spreadsheets identifying each item to be "soft seized." With the agreement of Widow Tosti, these items were "soft seized" and stored on premises owned by an art dealer/cooperating witness working with HSI, with Francesca Tosti being a named insured, to allow HSI to investigate whether these items were purchased with the proceeds of drug trafficking and money laundering, which they were not, as they had been purchased many, many years before 2019. It should be noted that the federal government had, as that point, eight years to investigate, and concoct some theory upon which these items could be seized, but were apparently still unable to do so. Confident these items were purchased well before the third party traffic stops in Nebraska in 2019 and 2020, Widow Tosti agreed to the "soft seize" procedure to allow the federal government even more time to try and make its case.

33.     In April of 2024, Special Agent Craig Allrich, and other agents from HSI, conducted another "soft seizure" of items stored in a storage unit in Los Angeles, consisting of millions of dollars in fine art. Counsel for Widow Tosti was present at this seizure as well, and the federal government created a spreadsheet of these items as well. As with the other "soft seized" items, they were stored on premises owned by an art dealer/cooperating witness working with HSI, with Francesca Tosti being a named insured, to allow HSI to investigate whether these items were purchased with the proceeds of drug trafficking and money laundering, which they were not, as they had been purchased many, many years before 2019.

34.     When counsel for Widow Tosti asked Special Agent Craig Allrich how he knew the items were purchased with the proceeds of marijuana sales, he was told that Mr. Reja had "admitted" all these items were purchased with "drug money." Despite repeated requests for the evidence supporting this ridiculous contention, none was ever produced. Similarly, when counsel for Widow Tosti asked Special Agent Craig Allrich how he could seize items purchased years before the events of 2019, he was told that a witness admitted this marijuana operation had been in existence since 1998. Again, no evidence supporting this ridiculous contention was ever

MATZ LAW GROUP
1516 OAK STREET, SUITE 194
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

provided. Bear in mind, the federal government had, at that point, six years to investigate and concoct some theory, but they were apparently still unable to do so,

35.    Due to Widow Tosti's demand for judicial review of the items seized from her home during Operation Point Break, the federal government was forced to file a Civil Forfeiture Complaint in federal court in Nebraska articulating the basis upon which the items were being seized. Before serving a copy of this Civil Forfeiture Complaint on Widow Tosti, the US Attorneys office in Nebraska went to the press instead to make a splashy showing, and to poison the jury pool, touting all the money they had seized, and claiming, falsely, that an Assistant US Attorney had "tied it specifically to the stope September 12, 2019" (which is patently false as the furniture items and jewelry was purchased many, many years before this date), and that Mr. Reja had "killed himself on November 13, 2023, to avoid apprehension," which is equally false. (*See* **Exhibit 10**). Apparently, the US Attorneys office in Nebraska would rather talk to the press than Widow Tosti, or her attorney. And, equally apparent, is that the local news in Nebraska does not bother to conduct any serious review of the allegations before reporting them to the public as gospel.

36.    In truth, with the filing of the Civil Forfeiture Complaint, Special Agent Craig Allrich and HSI's house of cards came crumbling down. For example, although Special Agent Craig Allrich had previously represented that Mr. Reja had "admitted" the items were purchased with "drug money," in the Civil Forfeiture Complaint, it was revealed that this claim was based on a single allegation (which is, itself, an alleged hearsay statement of a dead man):

> 123. CD-3 [local Los Angeles art dealer Mark Haddawy] knew that REJA's primary source of cash was derived from the illegal sale of marijuana. During a September 7, 2023, conversation with CD-3, while REJA was an active fugitive, REJA complained to CD-3 about the outstanding warrant and could not believe "all of this over weed."

As the "outstanding warrant" related to a traffic stop in 2019, this alleged "all over weed comment" was in no way, shape, or form an admission that fine art, furniture, and antiquities that were purchased, in some instances, over a decade before 2019 with "drug money."

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

37.   Similarly, the allegation that Mr. Reja had been operating this alleged marijuana trafficking enterprise since 1998 came from the alleged statement of a single witness, an immigrant who does not have status, and whose family does not have status, all of whom were threatened with deportation by Special Agent Craig Allrich[2], unless they agreed to make the following conclusory allegation against Mr. Reja, a dead man:

> 29.  CD-2 stated that since 1998, CD-2 has been working with…and REJA in various roles in the drug trafficking organization (DTO)…"

The "DTO" referred to is a fictional one Special Agent Craig Allrich, and his cohorts, and the US Attorneys' office, have been desperately trying to concoct – for over six years – in order to steal the entirety of the Estate of James Reja.  Meanwhile, Mark Haddawy, the local art Los Angeles art dealer who purchased fine art for Mr. Reja beginning in 2011, has apparently, in exchange for his false "all about weed" testimony against a dead man who can't defend himself, been allowed to retain what must be a very large sum of money in commissions, allowing him to, as of the date of filing, live comfortably in a house close to Justin Timberlake's house in the Hollywood Hills.  Providing false testimony to the federal government comes with big benefits, apparently.  Meanwhile, Widow Tosti and her children have been left penniless, and dependent upon food stamps to feed themselves.

38.   In the wake of this collapsing/crumbling of their case, after repeated demands from counsel for Widow Tosti, on June 12, 2024, the US Attorneys' Office in Nebraska agreed:

> Our office is not seeking to seize or forfeit the property inventoried in California in late April….As we have explained to Special Agent Craig Allrich, he has no authority to determine or negotiate what property our office would seek to seize or forfeit.

Shortly thereafter, incurring considerable expense, Widow Tosti arranged for the transport of these items from Mark Haddawy's "storage," which turned out to be nothing more than the garage of his house in the Hollywood Hills.  Many valuable items were damaged whilst stored there; what's more, Mr. Haddawy, who was operating under the supervision of HSI, or else as

---

[2] Special Agent Craig Allrich has also threatened to deport Widow Tosti's housekeeper and her husband unless she provided him with specified information, which Widow Tosti could not provide because (a) it was not true, and (b) she had no knowledge of any of the alleged "facts" he was trying to get her to admit.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

an agent, helped himself to valuable works of art and failed to turn them over to Widow Tosti, causing over a million dollars in damage.  It doesn't end there; during this process, Widow Tosti discovered Mr. Haddawy had purchased tribal works of art for Mr. Reja at premium prices, many of which turned out to be fakes, from a dealer known to persons in the same position as Mr. Haddawy to traffic in fakes (suggesting Mr. Haddawy was bilking his client), and that valuable paintings from Magritte and Tanges he purchased on behalf of Mr. Reja were, in fact, fakes, with one work using actual cards from auction houses for the original work on the back purporting to provide provenance, with the "painting" itself being a reproduction.  Although the damage caused during the storage of these items is the subject of this suit, Widow Tosti will be forced to bring suit against Mr. Haddawy based upon the fraud that was uncovered during this process, and evidence that Mr. Haddawy stole still more items from the Estate of James Reja in the months following Mr. Reja's death, apparently believing his status as HSI's "star" witness, and HSI's ability to harass, intimidate, and threaten Widow Tosti will protect him from such a suit – it will not, if Widow Tosti and her attorney have anything to say about it.

39.     On September 18, 2024, after many, many months of exhortation, HSI finally agreed:

Mr. Matz,

Personal items/property **not in HSI possession** can be handled at your discretion. As the soft seized items were, at that point, not in the possession of HSI, but, rather, after transport from Mr. Haddawy's Hollywood Hills garage, in the possession of the art auction houses Bonham's, and LAMA, in trust for the Estate of James Reja, and as the US Attorneys' office previously agreed it would not seek seizure or forfeiture of the items inventoried in late April, at this point, the entirety of the "soft seized" items were cleared, thus allowing Widow Tosti, in her role as Administrator for the Estate of Jams Reja, to sell them and distribute the proceeds to the beneficiaries of the Estate of James Reja.  Widow Tosti reasonably relied upon these representations from the federal government and, at great expenses, she arranged for the transport and sale of these items.

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

CASE NO.                                                      18                          TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

40.     In a "belt and suspenders" approach, suggested by Judge Clayton Brennan in the Probate Proceedings in Mendocino County, Widow Tosti also utilized a state court probate procedure whereby the federal government was given notice and an opportunity to the object to the sale of all the furniture, fine art, and antiquities and tribal art that had been cleared by the US Attorneys' office and HSI, with notice that failure to object would result in a waiver, and the federal government did not object.  At this point, what more could Widow Tosti have done to (a) ensure the federal government had been given ample time (over six years) to makes its case as to these items, and (b) ensure that selling these items through art auction houses, all done under the supervision of Judge Clayton Brennan in Mendocino County Superior Court, was lawful and fully transparent to all parties?

41.     Apparently, not enough; late last week, the newly appointed Interim US Attorney, Leslie Woods, who has not yet been confirmed, suddenly stated she wanted to "revoke" the previous agreements with the federal government, and come after the proceeds of the art sales in the Probate proceeding pending in Mendocino County Superior Court (which are, at this point, over $1,000,000) in yet another attempt by the federal government to steal from the Estate of James Reja, which threatens to cause still more property-based damage to Widow Tosti.  In the event Judge Clayton Brennan, in Mendocino County Superior Court, in any way grants any kind of relief to the US Attorneys Office in Nebraska (which he should definitely not do), the damage caused by this will be added to this action.

42.     Unfortunately, depriving Widow Tosti and her children, and other beneficiaries, of the benefit of more than a million dollars in probate proceeds is not enough – outrageously, based solely on her lawful acts as Administrator of the Estate of James Reja with respect to the sale of items previously "cleared" by both the US Attorneys' Office and HSI, undoubtedly at the urging of Special Agent Craig Allrich, in one last push to prevent Widow Tosti from seeking judicial review of his actions, he is now – more than six years after the events of 2019 – threatening criminal indictment of Widow Tosti based on vague and conclusory allegations they have not even bothered to disclose to her!

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

43.    Special Agent Craig Allrich killed Ms. Tosti's husband, leaving her children fatherless, then tried to steal everything Mr. Reja and Ms. Tosti ever owned, leaving her penniless, and now he wants to leave Ms. Tosti's children motherless as well, all in an attempt to prevent her from doing two simple and fundamental things (a) seek judicial review of the items seized from her home, and (b) seek judicial review of the events leading to the death of her husband.  Special Agent Craig Allrich is, without a doubt, a clear and present danger to Widow Tosti because these outrageous actions, blessed by the new Interim US Attorney. Leslie Woods in Nebraska, demonstrate there is nothing he won't do to try and fill the gaping holes in the seizure and forfeiture case HE'S HAD OVER SIX YEARS TO INVESTIGATE WITHOUT COMING UP WITH ANY EVIDENCE OF MS. TOSTI'S INVOLVEMENT IN ANY OF THIS!

**DEPRIVATION OF WIDOW TOSTI'S CIVIL AND CONSTITUTIONAL RIGHTS**

44.    The (we hope) final assault on Widow Tosti by the federal government is the deprivation of her civil and Constitutional rights.  In an email to her attorney, Robert Matz ("Attorney Matz"), and in an attempt to prevent Widow Tosti from bringing these claims, and with the blessing of newly appointed Interim US Attorney Leslie Woods, Special Agent Craig Allrich has threatened Widow Tosti (baselessly, absurdly, strategically, and unethically) with criminal indictment.  Special Agent Craig Allrich is doing so in the hopes that by so doing, Widow Tosti will not file suit against him.  Even more outrageously, newly appointed Interim US Attorney, Leslie Woods has stated, in an email, to help Special Agent Craig Allrich gain an advantage in a civil dispute, without support, that "anyone who represents a co-defendant in another civil matter is thereby conflicted out of representing Ms. Tosti" in connection with these threats of criminal indictment by Special Agent Craig Allrich.  Attorney Matz specially appeared for a co-defendant solely to consent to jurisdiction by a Magistrate Judge in the civil forfeiture proceedings, and to then tell that same Court this co-defendant had no interest in the forfeiture proceedings (*see* **Exhibit 11**)!  In fact, in the Order re Stay, Magistrate Judge Carson

Matz Law Group
1516 Oak Street, Suite 104
Alameda, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

notes that, after strategically including this co-defendant in the civil forfeiture matter to "bolster" and overlap argument:

> …the government agree[s] that there is no reason for him to be listed as a claimant in this case.

(*See* **Exhibit 11**, p. 5 of 7, right above II.  Motion to Stay).  In a word, "wow."

45.    Let's break this down.  The US Attorneys' Office in Nebraska adds a co-defendant to the Civil Forfeiture Complaint for strategic reasons, then uses his presence in the civil forfeiture proceeding as a reason there is an "overlap" between the criminal and civil forfeiture proceedings to support an argument that the case should be stayed (which, coincidentally, allows them to avoid providing any discovery to Widow Tosti).  Attorney Matz specially appears for this co-defendant, notes for the Court there is no reason for him to be listed (other than to bolster the US Attorneys' manufactured "overlap" argument).  The US Attorneys' Office in Nebraska gets caught in the act by Magistrate Judge Carson, forcing them to admit "there is no reason for him to be listed as a claimant in this case," and they (now) seek to use Attorney Matz's special appearance in the Civil Forfeiture proceeding on behalf of this co-defendant as a reason that Attorney Matz is conflicted, and cannot represent Widow Tosti and defend her against Special Agent Craig Allrich's threats of criminal indictment – MORE THAN SIX YEARS AFTER THE 2019 INCIDENT, BASED SOLELY ON ACTIONS SHE UNDERTOOK AS ADMINISTRATOR OF THE ESTATE OF JAMES REJA WITH THE PREVIOUS APPROVAL OF THE US ATTORNEYS' OFFICE IN NEBRASKA AND HSI! Apologies for the all caps, but this is, arguably, one of the most outrageous attempts by a US Attorneys' Office to deprive someone of her Constitutional right to counsel, solely to allow Special Agent Craig Allrich to continue to bully, harass, intimidate, and traumatize Widow Tosti by threatening to indict her, leaving her children both fatherless and motherless, not based on any actual evidence, mind you, but based solely on…a word that starts with the letter "b."

46.    But wait, unfortunately, there is even more.  Newly appointed Interim US Attorney, Leslie Woods, and Thomas Kangior, an Assistant US Attorney in Nebraska, then engaged in an *ex parte* communication with Widow Tosti, a person they know to be represented

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

by counsel, again in violation of ethical rules, authorizing Special Agent Craig Allrich to contact Widow Tosti, by text to her personal phone (remember, this is the man who she believes murdered her husband), telling her he sent an email containing a "demand letter" signed by both Interim US Attorney, Leslie Woods, and Assistant US Attorney Thomas Kangior, purporting to discuss the legal consequences for failing to agree to a "meeting" with Special Agent Craig Allrich (again, the man she believes murdered her husband) at the threat of criminal indictment. Again, in a word, "wow." It's bad enough that a rogue agent of the federal government is pulling out all the stops to try and prevent judicial review of his actions, it's far worse that Officers of the Court in Nebraska, under color of state law regulating attorneys, are engaged in attempted fraud on the Court, deprivation of someone's Constitutional right to counsel, and *ex parte* communications aimed directly at putting the fear of God into a mother of two, a woman they've already rendered a widow, penniless, and propertyless.

47.     Bear in mind, Interim US Attorney, Leslie Woods hasn't even been confirmed by the Senate, and yet, she is starting off her temporary tenure by engaging in unlawful, unethical, and completely outrageous behavior, all to further advance ICE's lawlessness. Senators Padilla and Schiff, and other Senators in the United States, the revelations in this humble Complaint should shock your conscience, and call into question Interim US Attorney Leslie Woods fitness to serve. Defendants are, quite literally, trying to get away with murder and theft, and are throwing the full weight of the federal government against Widow Tosti and her two children in the hopes she won't stand up to this tyranny, and simply allow the government to kill her husband, and take her property, without saying a word, and Interim US Attorney Leslie Woods, is offering her direct assistance in this unlawful endeavor. Widow Tosti is brave; she comes from good stock, her Grandfather was Edward Kunhardt Hidalgo, a Mexican-American attorney who served as United States Secretary of the Navy from 1979 to 1981, and was, according to Wikipedia, "the first Hispanic American to serve as Secretary of the Navy and promoted the recruitment of Hispanics for high command." (**Exhibit 12**).

MATZ LAW GROUP
1516 OAK STREET, SUITE 184
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

48.     Widow Tosti, who has not even had the opportunity to properly grieve over the loss of her husband, has been thrown into the fire in the Probate proceedings, the Civil Forfeiture Proceedings, the Quiet Title Proceedings, a baseless *Marvin* proceeding, and has now been thrown even further into the fire by Special Agent Craig Allrich's threats, and Interim US Attorney, Leslie Wood's actions aimed at depriving her of her right to counsel. Widow Tosti has repeatedly sought to settle these disputes, but the federal government has not responded to any of her many requests for a "meeting" to discuss settlement. Instead, because they would rather crush her, and Special Agent Craig Allrich is proposing a "meeting," without her choice of counsel, so he can try to further bully and bludgeon her into submission. Based on the foregoing facts, and many others too voluminous to include in a short, plain, statement, with humility, strength, and courage, as well as a call out to others in the legal community to lend assistance and support, Widow Tosti files this Complaint against Defendants and prays for the relief requested below, and a jury trial as to all issues so triable.

## FIRST CAUSE OF ACTION

### Wrongful Death

### (Against All Defendants)

49.     Plaintiffs incorporates and reasserts paragraphs 1 through 48 as though fully set forth herein;

50.     Plaintiffs allege and at all times relevant herein, Defendants, and each of them, were under a duty under the law;

51.     Plaintiffs allege that Defendants, and each of them, acted negligently, carelessly, recklessly, and/or unlawfully with respect to the arrest of James Reja on November 13, 2023, resulting in his death;

52.     The aforementioned acts by Defendants, and each of them, were not the result of the exercise of discretion, nor were they vested with discretion to contravene federal and state law;

TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

53.    Defendants were, at all times relevant herein, and each of them, on notice of the potentially violent and tragic consequences of their failure to follow the law;

54.    As a direct and proximate result of their wrongful acts and/or omissions, Plaintiff was damaged, in an amount to be determined, but in an amount that exceeds the jurisdictional minimum of this Court, the Claim lists the amount of $50,000,000;

55.    Wherefore, Plaintiffs prays for damages suffered as a direct and proximate result of the wrongful death of James Reja.

## SECOND CAUSE OF ACTION

## Damage to Property

## (Against All Defendants Except the US Marshalls Service)

56.    Plaintiffs incorporate and reassert paragraphs 1 through 55 as though fully set forth herein;

57.    Plaintiffs allege Defendants, and each of them, caused damage to property belonging to Plaintiffs;

58.    The damage caused by Defendants exceeds the jurisdictional minimum of this Court; the Claim lists damages of $16,000,000.

59.    Wherefore, Plaintiffs pray for damages to their property caused by Defendants.

## THIRD CAUSE OF ACTION

### *Bivens* Action, Deprivation of Federal Civil Rights
### (Against Defendants Interim US Attorney,
### Leslie Woods, and Assistant US Attorney, Thomas Kangior)

60.    Plaintiffs incorporate and reassert paragraphs 1 through 59 as though fully set forth herein;

61.    Plaintiffs allege that Interim US Attorney, Leslie Woods, and Assistant US Attorney, Thomas Kangior, have deprived Francesca Tosti of her rights, privileges, or immunities;

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

CASE NO.                    24                    TOSTI'S COMPLAINT FOR WRONGFUL DEATH, PROPERTY DAMAGE, AND *BIVENS* ACTION

62.     Plaintiffs allege that Interim US Attorney Leslie Woods, and Assistant US Attorney, Thomas Kangior, are persons acting under color of state law, by virtue of their actions as attorneys licensed by the State Bar of Nebraska, and their violation of state laws entitling Francesca Tosti to her right to counsel, and violation of state laws prohibiting *ex parte* communications with a person known to be represented by counsel;

63.     Plaintiffs allege they have been damaged as a direct and proximate result of the unlawful actions of Interim US Attorney, Leslie Woods, and Assistant US Attorney, Thomas Kangior, in an amount to be proven at trial, but in an amount that exceeds the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

a.     Judgment in favor of Plaintiffs as to all causes of action stated in the Complaint against Defendants;

b.     For damages, according to proof;

c.     For costs and fees in prosecuting the instant Complaint;

d.     For such further and other relief as the Court deems appropriate;

Dated: June 30, 2025          By:     _____
                                      Robert C. Matz (California State Bar No. 217822)
                                      Attorneys for Francesca Tosti, in her Individual
                                      Capacity and As Administrator of the Estate of
                                      James Reja

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues so triable.

Dated: June 30, 2025          By:     _____
                                      Robert C. Matz (California State Bar No. 217822)
                                      Attorneys for Francesca Tosti, in her Individual
                                      Capacity and As Administrator of the Estate of
                                      James Reja

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

CASE NO.                         25          TOSTI'S COMPLAINT FOR
                                             WRONGFUL DEATH, PROPERTY
                                             DAMAGE, AND *BIVENS* ACTION