# Exhibit 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

**1. Submit to Appropriate Federal Agency:**

Homeland Security Investigations (HSI)
Department of Homeland Security (DHS)
U.S. Customs and Border Protection (CBP)
~~●●●●●●●●●●●~~

**2. Name, address of claimant, and claimant's personal representative if any.** (See instructions on reverse). Number, Street, City, State and Zip code.

Francesca Tosti (Claimant/Admin of Estate of James Reja)
c/o Robert C. Matz (Attorney/Personal Rep.for Claimant)
1516 Oak Street, Suite 104
Alameda, CA 94501

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 12/17/1979 | Married/Widowed | 11/13/2023  Monday | 11 am |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

On 11/13/2023, after interfering with his mental illness medication regimen, agents of HSI/DHS/CPB/USMS rushed/tackled/shot James Reja (Decedent) at a pharmacy in Brentwood, Los Angeles. The officers knew or should have known in the exercise or reasonable care that their acts and omissions would result in harm to Decedent, and did in fact cause the death and injuries to Decedent, depriving Decedent's Spouse (Claimant/Admin of Decedent's Estate) of Decedent's financial and moral support and consortium, causing pain and suffering. HSI , DHS, and CPB also prevented Claimant's use of Her/Decedent's property.

**9.**

**PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

Gina Nieto, 350 Entrada Drive, Santa Monica, CA 90402; Kristina Warren, 1026 Gillis Place, Seacaucus, NJ 07094

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Furniture, Jewelry, Vehicles, and Fine Art wrongfully seized/placed on unofficial "hold" by agents of HSI/DHS, located in LA/SF.

**10.**

**PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

James Reja, Injured Person/Decedent, who was known to be mentally ill, was rushed/tackled/shot twice by agents of HSI, DHS, CBP, and/or USMS, ultimately resulting in a gunshot wound to head. Neither HSI, DHS, CBP, LAPD nor USMS have released detailed information on the incident, preventing Claimant from a fuller recitation of the events and identification of the precise agents and agencies involved. Claimant reserves the right to amend this Notice of Claim once full information is disclosed.

**11.**

**WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Craig Allrich, Special Agent, HSI | 717 Ave H East, Omaha, NE 68110 |
| Unknown Agents of HSI, DHS, CBP, USMS | Unknown at Present Time |
| Persons at Pharmacy | Unknown at Present Time |

**12.** (See instructions on reverse).

**AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 15,000,000 | 1,000,000 | 50,000,000 | 66,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Francesca Tosti* Claimant | (323) 714-4128 | 05-07-2024 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority*: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose*: The information requested is to be used in evaluating claims.
C.  *Routine Use*: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond*: Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

## PROOF OF SERVICE

I, Robert C. Matz, hereby declare I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1516 Oak Street, Suite 104, Alameda, CA 94501. On May 8, 2024, I served the following documents in the above-captioned matter:

**CLAIM FOR DAMAGE, INJURY, OR DEATH, CLAIMANT INFORMATION, AUTOPSY REPORT FOR JAMES REJA, REAL PROPERTY PREVENTED FROM USING, FURNITURE, JEWELRY, FINE ARTS PREVENTED FROM USING**

by United States Postal Service's Priority Overnight Service on the following parties:

Thomas Kangior
1620 Dodge St., Suite 1400
Omaha, NE 68102
U.S. Attorney

Homeland Security Investigations
Tort Claims Submission Representative
1717 Ave H East,
Omaha, NE 68110

U.S. Customs and Border Protection (CBP)
Troy A. Miller, Director
Tort Claims Submission Unit
1300 Pennsylvania Avenue NW, Room 3.5A,
Washington, DC 20229

Department of Homeland Security (DHS)
Office of the Executive Secretary, MS 0525
Tort Claims Submission Representative
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528-0525

I declare, under the penalty of perjury, under the laws of California, that the foregoing is true and correct.

Executed on May 8, 2024 in Alameda, California.

_____
Robert C. Matz

MATZ LAW GROUP
1516 OAK STREET, SUITE 104
ALAMEDA, CA 94501
(510)710-1071
ROBERT@MATZLAWGROUP.LEGAL

# Exhibit 2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse.) Number, Street, City, State and Zip code. |
|---|---|
| United States Marshall Service (USMS) Office of General Counsel Attn.: OGC Torts Team Building CG-3, 15th floor Washington, D.C. 20530-0001 | Francesca Tosti (Claimant/Admin of Estate of James Reja) c/o Robert C. Matz (Attorney/Personal Rep.for Claimant) 1516 Oak Street, Suite 104 Alameda, CA 94501 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 12/17/1979 | Married/Widowed | 11/13/2023    Monday | 11 am |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

On 11/13/2023, after interfering with his mental illness medication regimen, agents of HSI/DHS/CPB/USMS rushed/tackled/shot James Reja (Decedent) at a pharmacy in Brentwood, Los Angeles. The officers knew or should have known in the exercise or reasonable care that their acts and omissions would result in harm to Decedent, and did in fact cause the death and injuries to Decedent, depriving Decedent's Spouse (Claimant/Admin of Decedent's Estate) of Decedent's financial and moral support and consortium, causing pain and suffering.  .

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

James Reja, Injured Person/Decedent, who was known to be mentally ill, was rushed/tackled/shot twice by agents of HSI, DHS, CBP, and/or USMS, ultimately resulting in a gunshot wound to head. Neither HSI, DHS, CBP, LAPD nor USMS have released detailed information on the incident, preventing Claimant from a fuller recitation of the events and identification of the precise agents and agencies involved. Claimant reserves the right to amend this Notice of Claim once full information is disclosed.

| 11. | | WITNESSES |
|---|---|---|
| NAME | | ADDRESS (Number, Street, City, State, and Zip Code) |
| Craig Allrich, Special Agent, HSI | | 717 Ave H East, Omaha, NE 68110 |
| Unknown Agents of HSI, DHS, CBP, USMS | | Unknown at Present Time |
| Persons at Pharmacy | | Unknown at Present Time |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 1,000,000 | 50,000,000 | 51,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Francesca Tosti Claimant | (323) 714-4128 | 05-07-2024 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?    ☐ Yes  ☒ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of Insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. **A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority*: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose*: The information requested is to be used in evaluating claims.
C.  *Routine Use*: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information
D.  *Effect of Failure to Respond*: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## PROOF OF SERVICE

I, Robert C. Matz, hereby declare I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1516 Oak Street, Suite 104, Alameda, CA 94501. On May 8, 2024, I served the following documents in the above-captioned matter:

**CLAIM FOR DAMAGE, INJURY, OR DEATH, CLAIMANT INFORMATION, AUTOPSY REPORT FOR JAMES REJA**

by United States Postal Service's Priority Overnight Service on the following parties:

Thomas Kangior
1620 Dodge St., Suite 1400
Omaha, NE 68102
U.S. Attorney

US Marshalls Service
Office of General Counsel
Attn.: OGC Torts Team
Building CG-3, 15th floor
Washington, D.C. 20530-0001

I declare, under the penalty of perjury, under the laws of California, that the foregoing is true and correct.

Executed on May 8, 2024 in Alameda, California.

Robert C. Matz

**Robert Matz**

| | |
|---|---|
| **From:** | USMSTORTClaims <USMSTORTClaims@usdoj.gov> |
| **Sent:** | Wednesday, May 8, 2024 10:34 AM |
| **To:** | Robert Matz |
| **Subject:** | Automatic reply: Francesca Tosti's Claim Form for Wrongful Death of James Reja Due to Actions of USMS |

**Thank you for submitting an email to the USMS TORT Team.  This is an automated message so please do not respond to this email**

\*\*\*\*\*\*\*FOR STATUS INQUIRIES-WE ARE UNABLE TO PROVIDE INDIVIDUAL RESPONSES TO STATUS INQUIRIES

While we appreciate that you are eager for resolution of your claim(s), The FTCA affords the Government six months from the date a completed tort claim is received by this agency to administratively adjudicate the claim before a claimant can institute a civil action [28 U.S.C. § 2675(a)].  If your claim has been pending for less than six months, please be patient and await adjudication of your claim(s).  If your claim has been pending over six months, please understand that we are responding to many claims in addition to yours, and we are diligently working on claims in the order in which they were received.   If you are no longer able to await adjudication of your claim, and six months have elapsed, then you may file civil action in the appropriate U.S. District Court.

\*\*\*\*\*\*\* FOR NEW CLAIMS

Thank you for submitting an email to the USMS TORT Team.  This is an automated message so please do not respond to this email.  This inbox is checked by the USMS TORT Team daily.  If you have submitted a new administrative tort claim, please note that an acknowledgment letter will be mailed to the address listed on the administrative tort claim form confirming receipt and/or requesting additional information if needed.  If you have already submitted an administrative tort claim form, and are now providing additional supporting documentation for your claim, please note that you will <u>not</u> receive an acknowledgment for receipt of this information.

The applicable provisions of the Federal Tort Claims Act [28 U.S.C. §§ 1346(b), 2401(b), 2671, et seq.] provide for the payment of claims which arise from the negligent or wrongful act or omission of an employee of the Federal Government while acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The FTCA affords the Government six months from the date a completed tort claim is received by this agency to administratively adjudicate the claim before a claimant can institute a civil action [28 U.S.C. § 2675(a)].

Please notify this office of any change in address, and mail any additional requested documentation and all future correspondence concerning this matter to either this email address or:

*(For United States Postal Service)*
**Torts Team**
**Office of General Counsel, CG-3, 15th Floor**
**United States Marshals Service**
**Washington, DC 20530-0001**

*(For FedEx or UPS)*
**Torts Team**
**Office of General Counsel, CG-3, 15th Floor**
**United States Marshals Service**
**Landover Operations Center**
**3601 Pennsy Drive**
**Landover, MD 20785**

Thank you.

Respectfully,

**USMSTortClaims**
**USMS-OGC**
**Crystal Gateway 3, 15th Floor**
**Washington, DC 20530-0001**
**Telephone:  703-740-3943**
**Facsimile:    703-740-3980**

Exhibit 3

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):*<br>Robert C. Matz (SBN 217822)<br>Matz Law Alameda<br>1516 Oak Street, Suite 104<br>Alameda, CA 94501 | **DE-150** |

**TELEPHONE AND FAX NOS.:** (510) 710-1071

**FOR COURT USE ONLY**

**ATTORNEY FOR** *(Name):* Petitioner Francesca Tosti

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF MENDOCINO**
STREET ADDRESS: 700 Franklin Street
MAILING ADDRESS:
CITY AND ZIP CODE: Fort Bragg, CA 95437
BRANCH NAME: Ten Mile Branch

**FILED**

09/05/2024

KIM TURNER, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA,
COUNTY OF MENDOCINO

Jess, Dorothy

DEPUTY CLERK

**ESTATE OF** *(Name):*
In re: James Reja
                                                    **DECEDENT**

## LETTERS

| TESTAMENTARY | [x] OF ADMINISTRATION |
|---|---|
| OF ADMINISTRATION WITH WILL ANNEXED | SPECIAL ADMINISTRATION |

**CASE NUMBER:** 23PRO0200

### LETTERS

1. [ ] The last will of the decedent named above having been proved, the court appoints *(name):*

   a. [ ] executor.
   b. [ ] administrator with will annexed.

2. [x] The court appoints *(name):*
   Francesca Tosti
   a. [x] administrator of the decedent's estate.
   b. [ ] special administrator of decedent's estate
      (1) [ ] with the special powers specified in the *Order for Probate.*
      (2) [ ] with the powers of a general administrator.
      (3) [ ] letters will expire on *(date):*

3. [x] The personal representative is authorized to administer the estate under the Independent Administration of Estates Act [ ] **with full authority**
   [x] **with limited authority** (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. [x] The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date: **September 5, 2024**

Clerk, by

**KIM TURNER**

*(signature)*

**DOROTHY JESS** *(DEPUTY)*

### AFFIRMATION

1. [ ] PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. [x] INDIVIDUAL: **I solemnly affirm** that I will perform the duties of personal representative according to law.

3. [ ] INSTITUTIONAL FIDUCIARY *(name):*

   **I solemnly affirm** that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   *(Name and title):*

4. Executed on *(date):* March 5, 2024
   at *(place):* Elk                          , California.

   *(SIGNATURE)*

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL)

Date: **SEP 0 5 2024**

Clerk, by **KIM TURNER**

*(DEPUTY)*

**MARISSA N. GOULD**

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**LETTERS**
**(Probate)**

Probate Code, §§ 1001, 8403,
8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

# Exhibit 4

SUBSCRIBE

NEWSLETTER SIGN UP



## Los Angeles MAGAZINE

L.A. LORE   NEWS   POLITICS   CANNABIS

# Home Remedies

MARISSA GLUCK · NOV 1, 2009



Los Angeles *magazine, November 2009*

When Richard Neutra's cantilevered Kun House went on the market a few years ago, the listing agent advertised the 1936 property as fully restored and close to original condition. That was a joke, midcentury turnaround artist James Rega soon found out. "There was recessed can lighting," he recalls. "The previous owner painted the railings and casements silver without first stripping the wood. There was water and termite damage."

Rega bought the 1,700-square-foot house in the hills near Hollywood and Fairfax anyway, and on this boiling afternoon, in a dust mask and spattered T-shirt, he surveys the residence he's turned into a construction

site. Light fixtures have been removed, workmen are nailing wooden planks to restore the porch, and the bathroom has been stripped to its studs. Rega's speech is frenetic as he launches his tour on the roof deck. He stands on its edge, a single iron bar the only barrier between him and the steep hillside. The previous railing was terrible, he says. "Completely destroyed the views. Neutra's original railing would never be up to code today." But Rega is aghast at the prospect of installing the glass barrier now mandated by the city building department.

A former professional musician, Rega, 35, has the physique and energy of a young athlete; a receding hairline is the only hint of encroaching middle age. Rega co-owns the Kun House with his business partner, Gerald Casale, a former member of the band Devo. He has also purchased a unit in Rudolph Schindler's 1923 El Pueblo Rivera in La Jolla and a modern home in Palm Desert built in 1959 by the Alexander Construction Company. Rega is one of a few wealthy preservationists who purchase, meticulously restore, and sometimes sell midcentury L.A. homes the way others snap up Warhols or Picassos. These collectors are driven more by their passion for a project than by financial gain. They find discontinued materials to match original plans. They wade through blueprints and archival photos. They seek out original owners, architects, and craftspeople. In an economy marked by crisis and uncertainty, they fulfill a role that public and institutional groups may not have the resources to take on.

"It's impossible for nonprofits and governments to own these houses and be able to repair, restore, and maintain them," says Linda Dishman, executive director of the Los Angeles Conservancy. "Private individuals who undertake caring for architecture are incredibly valuable and build a legacy."

When a house of architectural significance is in danger of being demolished, real estate brokers—at least those who care about such things—call on buyers like Rega to spare it the fate of, say, Schindler's 1928 Wolfe House on Catalina Island (razed in 2001) or Neutra's 1962 Maslon House in Rancho Mirage (demolished in 2002). When faced with a possible teardown, Brian Linder, an agent who specializes in architectural properties, says Rega's number is one of the first he dials. "I want [the home] to fall into the right hands," says Linder. "I want to hand it off to a steward who will lovingly restore it."

Rega spent months tracking down Vitrolite, a heavy opaque (and obsolete) glass for the Kun bathroom. "Trying to replicate it or have it made was a dead-end street," he says. "I could have just used painted or laminated glass. That could have worked, but you see it in every clothing store in the Beverly Center." Rega eventually located a Vitrolite stash in Pennsylvania. "It was salvaged by a religious cult that scraps old buildings," he says. He estimates that the cost of buying the slabs of glass, cleaning them, shipping them, and having them installed by "the only Vitrolite guru still alive in the U.S." will come to $35,000. "If I used tile or laminated glass, I could have done it for $5,000. But if you put those materials side by side, the difference is night and day."

What constitutes a legitimate restoration? Purists worship the historic fabric of these homes and would like to see them restored to their virgin state, devoid of any modern convenience that was added after they were built. Others are less orthodox, choosing to rehabilitate the living and dining rooms and to update the kitchen, bathrooms, and other spaces in which technology has made the greatest strides. Rega falls closer to the former, although he acknowledges that sacrifices must sometimes be made. "James is a rarity," says Neutra's architect son, Dion. "He wants to get back to the original concept rather than update it or make today's version."

Born and raised in Pacific Palisades, Rega attended the Neutra- and Richard Alexander-designed Corinne A. Seeds University Elementary School at UCLA, though he was too young to appreciate the architecture. When he was 12, his family moved to Chile, where he remained until his early twenties. While there, Rega

Case 2:25-cv-05919-JLS-PD    Document 1-1    Filed 06/30/25    Page 16 of 29    Page ID
#:41

invested in a successful pharmaceutical company and on coming back to the United States designed toys for Mattel before turning to music as a composer and performer.

Five years ago Rega became seriously ill with a form of toxic mold syndrome contracted from the air-conditioning system in his music studio and loft. He read architecture books during his convalescence. "I started out selfish and hedonistic," he says. "I was sick and miserable and thought I'd rather live in a tent than a shithouse. I decided I'd either build something new or save something." He found a lot of the new construction in L.A. to be "embarrassing." After a trip to Europe, where he was inspired by architecture in Berlin and Barcelona, he decided to pursue the "level of perfection and detailing" he saw there. "I'm trying in my own way to travel to another period, to re-create a reality that's different from the current one," he says.

The Kun House cost Rega and Casale $2 million when they bought it in January 2008. (The home is also famous as the project that launched the career of the late architectural photographer Julius Shulman.) Rega estimates an additional $1 million for the restoration. That brings the cost to $1,732 per square foot, in a neighborhood where prices are closer to $600. Though pedigreed architecture typically commands a premium, the final cost for the Kun House seems nearly impossible to recoup. Yet Rega remains hopeful. He points to Case Study House No. 21 by Pierre Koenig, which was auctioned in 2006 for nearly $3.2 million despite a property appraisal of less than $1 million.

That was at the height of the real estate boom, when architectural provenance could propel a home's sales price into the stratosphere. Today's market is far less kind to sellers. Neutra's Kaufmann House in Palm Springs failed to sell at auction last year. Schindler's How House in Silver Lake, with an asking price of nearly $4 million, was listed for more than a year and didn't sell.

As Rega and his fellow collectors can tell you, even with all the costly restorations, masterpieces by the likes of Neutra and Schindler are undervalued. Rega points to a record-setting $28.3 million auction price for a Dragon chair by Irish furniture designer and architect Eileen Gray that sold in February. "If an Eileen Gray chair can sell for that much," Rega asks, "why shouldn't one of her houses be valued similarly?" Craig Krull, who owns the eponymously named gallery at Bergamot Station that features architectural photography, agrees. "Something Neutra designed sitting next to a piece of junk should not be priced the same just because they have the same square footage or share a zip code," Krull says. "It's ludicrous."

Today Rega's now-mold-free studio in Hollywood is his base as he bounces from house to house, overseeing construction details. He doesn't seem too concerned with getting a return on his investment. He's not even sure he'll wind up selling any of his houses; in fact, he's interested in acquiring more. "It could belong to a museum one day," says Rega of the Kun House. "Or I may live there and open it periodically to the public." Rega has begun to rope others into his obsession. When Rudolph Schindler's 1939 Van Dekker House in Woodland Hills—in need of a massive rehab—went up for sale this year, Rega persuaded his friend Josh Gorrel to buy it, promising to kick in some elbow grease with the restoration.

Lately Rega has been reaching beyond architectural rescue. He's in the initial planning stages to rebuild the 1935 Northridge home Neutra did for director Josef von Sternberg, which was demolished in 1971 to make room for tract housing. He's also commissioning a Le Corbusier residence that never made it past the blueprint stage. Rega doesn't see a contradiction between a faithful restoration and rebuilding from the ground up. If Frank Lloyd Wright's Fallingwater is the *Citizen Kane* of architecture, then perhaps the von Sternberg house is the latest *Batman* sequel. "I'm not rebuilding Fallingwater," he says.

Photograph by Michael Kelley

# Exhibit 5



# SAVE OUR HERITAGE ORGANISATION

DONATE

ABOUT SOHO    OUR HISTORIC SITES    ADVOCACY    TOURS & EVENTS    PRESERVATION RESOURCES    PUBLICATIONS    SUPPORT

**James Rega**
A Modern Masterpiece Award

Every so often a house of great importance will find itself in the hands of the perfect owner. Such is the case here with a landmark beach cottage at El Pueblo Ribera in La Jolla. A project that is so carefully crafted and so closely reflects the spirit of its legendary architect, Rudolph Schindler, that it elicited intense response of gratitude and awe from the jury and SOHO staff.



The creation of the internationally known pioneer of modern architecture Rudolph M. Schindler and built in 1923, the home survives as a reminder of a time of innovation and experimentation in architecture in California, when men such as Schindler were trying out the new ideas that would guarantee them places in architectural history. The concrete walls, once finely detailed, were crumbling, and the wood detailing rotting. Additions or enclosed areas marred some of the original design. The restoration ranged from rebuilding experimental concrete walls and replicating redwood windows and doors, to dusting off Schindler's own furniture designs and recreating them for the home. A rooftop sleeping porch, which had been enclosed as a bedroom, is back to its original state. The crumbling sandblasted concrete walls restored to original perfection. This and other trademark features have been restored to the great delight of anyone who views it. This is the kind of restoration and stewardship of an architectural treasure one can only hope for and here that hope was realized.

Photo courtesy James Rega

PAST PEOPLE IN PRESERVATION AWARD WINNERS

2024 | 2023 | 2022 | 2021

2020 | 2019 | 2018 | 2017 | 2016

2015

2014

- Lifetime Achievement
- Preservationist of the Year
- A Modern Masterpiece
- Preservation in Practice
- Residential Restoration
- Commercial Restoration
- Piecing Together the Past
- A Towering Achievement
- Wrighting a Wrong
- Town Crier
- Gift to the Street
- Plaza de People

2013 | 2012 | 2011

2010 | 2009 | 2008 | 2007 | 2006

2005 | 2004 | 2003 | 2002 | 2001

Click Master list of winners
to view from 1983 to current year


Sign up for our Email List

 
Find us on


Make your donation today

Mailing - PO Box 80788 · San Diego CA 92138 | Offices - 3525 Seventh Avenue · San Diego CA 92103
Offices, Museums & Shops (619) 297-9327
Home | Contact

Select Language | ▼

# Exhibit 6

SEALED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2023 NOV 14  PM 12: 14
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DAVID LEIDERMANN, JAMES REJA,
ERIC THIBODO, EVAN BOWEN,
DAVID KYLE BOESE, ADAM ROSS
BREGMAN, GABRIEL R. COLINDRES,
JUSTIN GARRINGER, MICHAEL
GARRINGER, and RICHARD WESLEY
MARSHALL,

Defendants.

8:23CR86

SUPERSEDING INDICTMENT

18 U.S.C. § 2
18 U.S.C. § 982(a)(1) & (b)(1)
18 U.S.C. § 1956(a)(1)(B)(i)-(ii)
21 U.S.C. §§ 841(a)(1) & (b)(1)
21 U.S.C. § 846
21 U.S.C. § 853(a)(1) & (a)(2)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

The Grand Jury charges that:

## COUNT I

From an unknown date but at least as early as January 1, 2000, and continuing to August

31, 2021, in the District of Nebraska and elsewhere, the defendants DAVID LEIDERMANN,

JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE, ADAM ROSS

BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER,

and RICHARD WESLEY MARSHALL, knowingly and intentionally combined, conspired,

confederated and agreed with each other, and with other persons known and unknown to the

Grand Jury, to commit the following offense against the United States: to distribute and possess

with intent to distribute 1000 kilograms or more of a mixture and substance containing a

detectable amount of marijuana, a Schedule I controlled substance, and a mixture, compound and

preparation containing tetrahydrocannabinol ("THC"), its salts, isomers, and salts of isomers,

contained in distillate a/k/a hashish oil and contained in "wax" a/k/a "shatter," a Schedule I

1

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and
841(b)(1).

In violation of Title 21, United States Code, Section 846.

## COUNT II

From an unknown date but at least as early as August 1, 2014, and continuing to August
31, 2021, in the District of Nebraska and elsewhere, the defendants DAVID LEIDERMANN,
JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE, ADAM ROSS
BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER,
and RICHARD WESLEY MARSHALL, did knowingly conduct, attempt to conduct, and cause
to be conducted, financial transactions affecting interstate commerce which involved the
proceeds of a specified unlawful activity, that is: Distribution and Conspiracy to Distribute and
Possess with Intent to Distribute Marijuana and THC, its salts, isomers, and salts of isomers, in
violation of Title 21, United States Code, Sections 841 and 846, knowing that the transactions
were designed in whole and in part to conceal and disguise the nature, location and source of the
proceeds of said specified unlawful activity, and that while conducting and attempting to conduct
such financial transaction knew that the property involved in the financial transaction represented
the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT III

From an unknown date but at least as early as August 1, 2014, and continuing to August
31, 2021, in the District of Nebraska and elsewhere, the defendants DAVID LEIDERMANN,
JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE, ADAM ROSS
BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER,
and RICHARD WESLEY MARSHALL, together and with others known and unknown to the

Grand Jury, knowingly combined, conspired, and confederated and agreed among themselves and each other to commit the following offense against the United States in violation of Title 18, United States Code, Section 1956 as follows: to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activities, that is: Distribution and Conspiracy to Distribute and Possess with Intent to Distribute Marijuana and THC, its salts, isomers, and salts of isomers, in violation of Title 21, United States Code, Sections 841 and 846, (1) knowing the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and (2) knowing the transaction was designed in whole or in part to avoid a transaction reporting requirement under State or Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

All in violation of Title 18, United States Code, Section 1956(h), and 2.

## FORFEITURE ALLEGATION

1. The allegations contained in Counts I-III of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853 and pursuant to Title 18, United States Code, Section 982(a)(l).

2. Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 846, Defendants DAVID LEIDERMANN, JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE, ADAM ROSS BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER, and RICHARD WESLEY MARSHALL shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit,

3

or to facilitate the commission of, the offense. In addition, pursuant to Title 18, United States Code, Section 982(a)(l), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, the defendants, DAVID LEIDERMANN, JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE, ADAM ROSS BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER, and RICHARD WESLEY MARSHALL, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

3.  The property to be forfeited includes, but is not limited to:

    a.  U.S. funds in the amount of $459,314.59 seized August 31, 2023, from City National Bank account 101388425 owned by Gerald V. Casale, Trustee of the Gerald V. Casale Trust.

    b.  U.S. funds in the amount of $121,071.62 seized August 31, 2023, from City National Bank account 112559124 belonging to More Gold Records, owned by Gerald V. Casale.

    c.  U.S. funds in the amount of $2,033,094.98 seized November 3, 2023, from JP morgan Chase Account, account #556772583 in the name of Closet Dorr LLC, C/O of Gina Nieto this represents the net proceeds of the sale of 428 N Las Palmas Avenue, Los Angeles.

    d.  Real property located at Mendocino County, California, Parcel # 131-010-08, no address.

    e.  Real property located at Mendocino County, California, Parcel # 131-030-01, 10000 S Hwy 1 Elk, California.

    f.  Real property located at Mendocino County, California, Parcel # 131-030-03, 9980 S Hwy 1 Elk, California.

g.  Real property located at Mendocino County, California, Parcel # 131-030-05, no
    address.

h.  Real property located at Mendocino County, California, Parcel # 131-030-06, no
    address.

i.  Real property located at Mendocino County, California, Parcel # 131-030-08,
    9961 S Hwy 1 Elk, California.

j.  Real property located at Mendocino County, California, Parcel # 131-030-23,
    10001 S Hwy 1 Elk, California.

k.  Real property located at Mendocino County, California, Parcel # 131-030-24, no
    address.

l.  Real property located at Mendocino County, California, Parcel # 131-030-25, no
    address.

m.  Real property located at Mendocino County, California, Parcel # 131-030-31, no
    address.

n.  Real property located at Mendocino County, California, Parcel # 131-030-32,
    8821 S Hwy 1 Elk, California.

o.  Real property located at Mendocino County, California, Parcel # 131-030-33,
    8821 S Hwy 1 Elk, California.

p.  Real property located at Mendocino County, California, Parcel # 131-090-24,
    9201 S Hwy 1 Elk, California.

q.  Real property located at Napa County, California, Parcel # 052-472-021, 51 Syar
    Drive, Napa, California.

r.  Real property located at Marin County, California, Parcel # 007-096-02, 259
    Redwood Road, San Anselmo, California.

s.  Real property located at Marin County, California, Parcel # 100-090-07, 2125
    Dillion Beach Road, Tomales, California.

t.  Real property located at Los Angeles County, California, Parcel # 5021-006-023,
    816 Seward Street, Los Angeles, California.

u.  **Money Judgment**. Judgment against Defendants DAVID LEIDERMANN,

    JAMES REJA, ERIC THIBODO, EVAN BOWEN, DAVID KYLE BOESE,

5

ADAM ROSS BREGMAN, GABRIEL R. COLINDRES, JUSTIN GARRINGER, MICHAEL GARRINGER, and RICHARD WESLEY MARSHALL, for a sum of money equal to the value of the property constituting, or derived from, any proceeds Defendants obtained directly or indirectly as a result of the offenses alleged in Counts II and/or III of this Superseding Indictment, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Counts II and/or III of this Superseding Indictment, in the approximate amount of $250,000,000.

4.    If any of the property described above, as a result of any act or omission of Defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(l) and Title 28, United States Code, Section 2461(c).

In violation of Title 18, United States Code, Section 982(a)(l) and Title 21, United States Code, Section 853(a)(l) and (a)(2).

A TRUE BILL.

6

_____
FOREPERSON

    The United States of America requests that trial of this case be held in Omaha, Nebraska,
pursuant to the rules of this Court.

_____
THOMAS J. KANGIOR
Assistant U.S. Attorney

7

Exhibit 7

COUNTY OF LOS ANGELES

DEPARTMENT OF MEDICAL EXAMINER

# 12

# AUTOPSY REPORT

I performed an autopsy on the body of  ➡

at

the DEPARTMENT OF MEDICAL EXAMINER

No.

2023-15604
REJA, JAMES VINCENT

Los Angeles, California          on   November 15, 2023       1000
                                     (Date)                   (Time)

From the anatomic findings and pertinent history I ascribe the death to:

(A)   GUNSHOT WOUND OF THE HEAD
DUE TO OR AS A CONSEQUENCE OF
(B)

DUE TO OR AS A CONSEQUENCE OF
(C)

DUE TO OR AS A CONSEQUENCE OF
(D)

OTHER CONDITIONS CONTRIBUTING BUT NOT RELATED TO THE IMMEDIATE CAUSE OF DEATH

MANNER OF DEATH
  SUICIDE
HOW INJURY OCCURRED
   SELF-INFLICTED

Anatomic Summary :

  I.   Gunshot wound # 1, head
       A. Entrance: Right parietal scalp
       B. Exit: Left posterior parietal scalp
       C. Projectile: None
       D. Direction: Front to back, right to left
       E. Path: Skin and soft tissues of the right parietal scalp,
          right parietal bone, right and left parietal brain, left
          parietal bone, left parietal scalp
       F. Associated findings:
           1. Multiple fractures of the frontal, bilateral
              parietal, and occipital bones
           2. Bilateral frontal lobe subarachnoid hemorrhage
       G. Range of fire: Close

  II.  Gunshot wound # 2, pelvis, graze
       A. Defect: Left buttock
       B. Projectile: None
       C. Direction: Indeterminate
       D. Path: Skin and soft tissues of the left buttock
       E. Range of fire: Indeterminate

  III. Gunshot wound # 3, lower extremity, graze
       A. Defect: Left lateral knee
       B. Projectile: None
       C. Direction: Indeterminate

COUNTY OF LOS ANGELES

# AUTOPSY REPORT

DEPARTMENT OF MEDICAL EXAMINER

| No. |
|---|
| 2023-15604 |
| REJA, JAMES VINCENT |

**12**

Page 2

D. Path: Skin and soft tissues of the left lower extremity
E. Range of fire: Indeterminate

IV.  See toxicology report

**CIRCUMSTANCES:**
Please see the Medical Examiner Investigator's Report.

**IDENTIFYING FEATURES:**
The body is identified by medical examiner tags, 2023-15604, and is that of an unembalmed, refrigerated, well-developed adult male who appears the reported age of 49 years. The body measures 71 inches and weighs 170 pounds. There is no jaundice. No surgical scars and no tattoos are identified.

**EVIDENCE OF TRAUMATIC INJURY:**
There are 3 separate gunshot wounds of the body diagrammed on forms 20-2 and 22. The numbering of wounds is for descriptive purposes only and is not intended to imply the sequence or severity of injuries. All measurements and wound track directions are performed in the standard anatomic position at all times. Medical examiner diagrams are not intended to be facsimiles nor are they drawn to scale.

I.   Gunshot wound # 1, head
   A. Entrance: Right parietal scalp
      1. Centered at 2-1/2 inches below the top of the head, 3 inches right of anterior midline
      2. 4 x 3-1/2 inch gaping, irregular shaped defect
         a. An approximately 1 x 1 inch irregular, vaguely ovoid shaped defect of the underlying parietal bone contains internal beveling
      3. Marginal abrasion is not identified
      4. Soot is present on the underlying parietal bone; stippling is not identified on the skin
   B. Exit: Left posterior parietal scalp
      1. 2-1/2 inches below the top of the head, 1-3/4 inches left of posterior midline
      2. 1 x 1 inch stellate skin defect
   C. Projectile: None
   D. Direction: Front to back, right to left

76A79SP-Rev 8/6/15